```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFF KLIMASKI,                         :
                                       :
           PLAINTIFF,                  :   CIVIL ACTION
                                       :
   v.                                  :   No. 05-cv-0298
                                       :
PAREXEL INTERNATIONAL and BARNETT      :
INTERNATIONAL,                         :
                                       :
           DEFENDANTS                  :
```

## MEMORANDUM AND ORDER

**Joyner, J.**                                               **June 12, 2008**

Presently before this Court is Defendant Parexel International's ("Parexel") and Defendant Barnett International's ("Barnett") (together "the Defendants") Motion for Partial Summary Judgment ("D. Mot.") (Doc. No. 53), Plaintiff's Response ("P. Resp.") (Doc. No. 73) and Defendants' Reply ("D. Rep.") (Doc. No. 77). For the reasons set forth below, the Court DENIES Defendants' motion.

## Background

In January of 2005, Plaintiff Jeff Klimaski brought this action again Parexel for retaliatory discharge under the Sarbanes-Oxley Act. He later added a claim for defamation. Plaintiff Klimaski worked as the Director of Business Planning

Operations for Barnett International.[1]  In August of 2003, Plaintiff received a call from Barnett's external auditors, Ernst & Young LLP, informing him that a senior analyst had failed to provide supporting documentation for two pre-paid invoices.  In investigating these two invoices, Klimaski found approximately $300,000 in additional expenses that were missing documentation.  Upon realizing that the Barnett account had been significantly overstated, Klimaski contacted his colleague, James Collins to inform him of his findings.  Between August and October of 2003, Klimaski discussed the account overstatements with Parexel Controllers Larry Green and Rick Anderson, SEC Reporting Director Barbara Chan, Vice President of Medical Marketing Services Jeff Ammons, and President of Parexel Consulting Group Andrew Morffew.  Klimaski was terminated on April 28, 2004.  Defendants allege that Klimaski was terminated for performance problems, including his failure to properly review financial records, and his refusal to respond to requests for information needed by Parexel to complete its investigation into the account overstatements.  Plaintiff claims that he was terminated because he joined his colleague, Mr. Collins in a whistleblower complaint and was thus retaliated against in violation of the Sarbanes-Oxley Act of 2002.  In addition, Plaintiff claims that he was further

---

[1] Plaintiff was hired by Barnett, which, during the course of Plaintiff's employment became a division of a subsidiary of Defendant Parexel International Corporation.

retaliated against when Parexel employees published defamatory statements about him, thereby destroying his reputation within the business community.

## Standard for Summary Judgment

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense.  Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).  Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is genuine only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden."  Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998).  In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  See Nicini v. Morra, 212 F.3d 798, 806 (3d Cir.

2000). However, there must be more than a "mere scintilla" of evidence in support of the non-moving party's position to survive the summary judgment stage. <u>Anderson</u>, 477 U.S. at 252.

## **Discussion**

A. Defamation

Plaintiff alleges that in addition to his alleged unlawful retaliatory termination by Parexel, his reputation was also destroyed when several of the company's employees, including Steve Pugliese (a consulting manager), published defamatory statements about him. (Pl. Resp. at 3.) Plaintiff also alleged at the time of his deposition that several other employees made defamatory statements about him including Nalia Ganatra, acting Director of Barnett Educational Services and Shaun Moran, Barnett's marketing manager.

Under Pennsylvania law, in order to prove a claim for defamation, Plaintiff must establish (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) an understanding by the reader or listener of its defamatory meaning; (5) an understanding by the reader or listener of an intent by the defendant that the statement refers to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged position. <u>Clemente v.</u>

Espinosa, 749 F. Supp. 672, 677 (E.D. Pa. 1990) (citing 42 Pa. Cons. Stat. § 8343(a) (1988)).  A statement is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  Id. at 676 (quoting Cosgrove Studio and Camera Shop, Inc. v Pane, 182 A.2d 751, 753 (Pa. Sup. Ct. 1962)).  Under Pennsylvania law, it is for the court to determine whether the statement at issue is capable of defamatory meaning.  Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570 (E.D. Pa. 1999), aff'd, 229 F.3d 1139 (2000).

Defendants contend that Plaintiff fails to provide sufficient information to support his claims for defamation as set forth in Count II of his Amended Complaint.  We disagree.

Plaintiff describes several incidents where Parexel representatives allegedly published defamatory statements about him which have damaged his reputation within the business community.

First, Plaintiff alleges that Lorie Ferraro, Director of Human Resources at Parexel, admitted at her deposition that defamatory statements were made by Steve Pugliese about Klimaski concerning his mishandling of funds.  Citing Ferraro's December 2005 deposition, Plaintiff argues that "Pugliese told third parties that Parexel fired Klimaski because he mismanaged money." (Pl. Resp. at 3).  Upon review of the relevant portion of Ms.

Ferraro's deposition, we find no support for such argument.

Clearly, Ms. Ferraro does not admit, as Plaintiff suggests, that Mr. Pugliese published defamatory statements about Plaintiff.  At no point did Ms. Ferraro admit at her deposition that she heard any other employee make defamatory statements about Plaintiff.  As Defendant accurately points out in its motion, Ms. Ferraro only stated that if Mr. Pugliese had told the office that Plaintiff mismanaged money, she would not have been surprised to hear that.  We cannot construe Ms. Ferarro's response as an admission that she heard Mr. Pugliese disparage Plaintiff and thus refuse to consider this evidence in our analysis.

Plaintiff has alleged, however, that Mr. Pugliese, as well as other Parexel employees, published comments alleging that Plaintiff misappropriated funds in other settings.  Plaintiff testified that although he did not hear any comments directly, he was informed about them by his co-workers.  For example, Plaintiff testified that Naila Ganatra, acting director of Barnett Educational Services told his colleagues that Plaintiff had been terminated for "mishandling almost two million dollars."  See Declaration of Oswaldo Feliciano; Pl. Mot. at Ex. 3., Pl. Dep. at 281-91.  Similarly, Plaintiff avers that Shaun Moran, Barnett's marketing manager, also defamed him when she made statements alleging that he had mishandled funds.  Id.  Plaintiff

6

additionally claimed at his deposition that a host of other Parexel employees had publically made comments alleging his involvement in illegal activity and that it was the reason for his termination.  Id.

While Defendants argue that such statements are inadmissable hearsay, we agree with Plaintiffs that they are not hearsay as they are admissions of a party-opponent.  See FED. R. EVID. 801(d)(2)(D) (a statement is not hearsay if [it] is offered against a party and is [made] by the party's agent or servant concerning a matter within the scope of the agency or employment ... during the existence of the relationship.)

Defendants nevertheless argue that Plaintiff fails to provide evidence that these alleged defamatory statements harmed his reputation in the business community and they are therefore entitled to summary judgment on this claim.  As stated earlier, one of the requirements of a defamation claim is to show "special harm" resulting to the plaintiff from its publication.  Espinosa, 749 F. Supp. at 677.  The term "special harm" is defined as "actual damages which are economic or pecuniary losses."  Sprague v. Am. Bar Ass'n, 276 F. Supp. 2d 365, 368-69 (E.D. Pa. 2003) (quoting Restatement (Second) of Torts, § 575, cmt. b (1977)).  However, Pennsylvania recognizes an exception to the "special harm" requirement for slander actions.  A plaintiff may succeed in a claim for defamation absent proof of special harm where the

spoken words constitute slander per se.  <u>Espinosa</u>, 749 F. Supp. at 677.  There are four categories of words that constitute slander per se: words that impute (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct.  <u>Id.</u> (citing Restatement (Second) of Torts § 570 (1977)).

Without using the slander per se standard, Plaintiff would not have a sufficient defamation claim because he cannot establish any "special" harm.  He has not identified any economic or pecuniary losses suffered as a direct result of the alleged communications.  However, Plaintiff has described "multiple damages caused by the defamation, namely hindering [his] ability to get a job...because of his reputation." (Pl. Mot. at 8.)

In Pennsylvania, a defendant who publishes a statement which can be considered slander per se is liable for the proven, *actual* harm that the publication causes.  <u>Walker v. Grand Cent. Sanitation</u>, 634 A.2d 237, 244 (Pa. Super. Ct. 1993).  To show actual damages in a defamation claim, the plaintiff must show competent proof.  <u>Sprague</u>, 276 F. Supp. 2d at 368.  Actual damages are divided into two types: general and special.  <u>Id.</u> "General" damages typically flow from defamation, such as "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." <u>Id.</u>  The Restatement (Second) of Torts requires a victim of slander per se

8

to make some showing of general damage, although he need not prove "special damage." Walker, 634 A.2d at 241. Proof of general damages is required, since it accommodates the Court's interest in maintaining some type of control over the amount that a jury should be entitled to compensate an injured person. Id. at 251. In determining if a plaintiff has demonstrated any loss to reputation, it must be measured by the perception of others, rather than that of the plaintiff himself because "reputation is the estimation in which one's character is held by his neighbors or associates." Sprague, 276 F. Supp. 2d at 370.

Previous cases have made assessments of the evidence of such actual harm. For example, in Marcone v. Penthouse International Magazine, the plaintiff testified that he was "frustrated, distraught, upset, and distressed," and that he feared "retribution against his family." Marcone v. Penthouse International Magazine, 754 F.2d 1072, 1080 (3rd Cir. 1985). Likewise, in Sprague, the plaintiff asserted that the defamatory statements caused him "anger, humiliation, embarrassment, and fear." Sprague, 276 F. Supp. 2d at 371. He also alleged that his fear was "constant and continuous." Id. at 372. In these cases, the court found that there was sufficient evidence of actual harm for a jury to decide the issue.

We find that under the slander per se standard, Plaintiff has demonstrated damages sufficient to support his defamation

claim and thus survive summary judgment.  As we have previously found, where a "reasonable jury could find that Plaintiff has suffered from some continuous fear, embarrassment, or humiliation to his reputation within the community", general damages may be satisfied at the summary judgment phase.  See Pennoyer v. Marriott Hotel Servs., Inc., 324 F. Supp. 2d 614, 619 (E.D. Pa. 2004).

At his deposition, when asked what damages he has suffered, Plaintiff expressed present concern that his reputation was damaged as a result of these statements and that it would likely impair his ability to obtain employment:

> Could be multiple damages.  Hinder my ability to get a job when I go get it down the road, because of my reputation.  Certainly, none of the people that I worked with at Barnett after hearing that, would probably hire me if they were in a position to hire me.  Certainly, any of the people at Parexel down the road if they were in a position to hire me, wouldn't hire me.

Pl. Dep. at 297.

While it is true that at the time of his deposition in February 2006, Plaintiff could only speculate about the impact that the statements might have on future employment, he clearly elucidates ongoing concern about his perceived standing within the community and the correlation between the substance of the comments (alleging mismanagement or misappropriation of money) and his

current and future credibility as an accounting professional.[2]

**Conclusion**

For all of the reasons set forth above, Defendants Motion for Partial Summary Judgment is **DENIED** pursuant to the attached order.

---

[2] We expect, at trial, that Plaintiff will present further evidence of damage to his reputation.  While we agree with Defendants that Plaintiff's current claim is somewhat speculative, at this phase of summary judgment (drawing reasonable inferences in favor of the non-moving party) we find sufficient evidence in the record to support Plaintiff's fear that his standing in the community has been compromised.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEFF KLIMASKI, | : | |
| | : | |
| PLAINTIFF, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 05-cv-0298 |
| | : | |
| PAREXEL INTERNATIONAL and BARNETT INTERNATIONAL, | : | |
| | : | |
| DEFENDANTS | : | |

**ORDER**

AND NOW, this   12th   day of June, 2008, upon consideration of Defendants' Motion for Partial Summary Judgment, and the responses thereto, for the reasons stated in the accompanying memorandum, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, J.